**Civil Action No. 1:21-mc-00059-RGA**
**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

---------------------------------------------- X

| | |
|---|---|
| In re: | : Chapter 11 |
| | : |
| TK HOLDINGS, INC., *et al.*, | : Bankruptcy Case No. 17-11375 (BLS) |
| | : |
| Debtors.[1] | : (Jointly Administered) |

---------------------------------------------- X

| | |
|---|---|
| Eric D. Green, as Trustee of the Takata | : |
| Airbag Tort Compensation Trust Fund, | : |
| | : |
| Plaintiff/Appellee, | : |
| | : Appeal from the U.S. Bankruptcy Court |
| v. | : for the District of Delaware |
| | : |
| Mitsui Sumitomo Insurance Company, | : Adv. Pro. No. 20-51004 (BLS) |
| Limited, | : |
| | : |
| Defendant/Appellant. | : |

---------------------------------------------- X

**RESPONSE OF THE TRUSTEE OF THE TAKATA AIRBAG TORT
COMPENSATION TRUST FUND TO MITSUI SUMITOMO INSURANCE
COMPANY, LIMITED'S MOTION FOR LEAVE TO FILE
INTERLOCUTORY APPEAL**

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Takata Americas (9766); TK Finance, LLC (2753); TK China, LLC (1312); TK Holdings, Inc. (3416); Takata Protection Systems Inc. (3881); Interiors in Flight Inc. (4046); TK Mexico Inc. (8331); TK Mexico LLC (9029); TK Holdings de Mexico, S. de R.L. de C.V. (N/A); Industrias Irvin de Mexico, S.A. de C.V. (N/A); Takata de Mexico, S.A. de C.V. (N/A); and Strosshe-Mex, S. de R.L. de C.V. (N/A) (collectively, the "Debtors"). Except as otherwise set forth herein, the Debtors' international affiliates and subsidiaries are not debtors in these Chapter 11 cases. The location of the Debtors' corporate headquarters is 2500 Takata Drive, Auburn Hills, Michigan 48326.

Dated:    March 15, 2021      **BLANK ROME LLP**
            Wilmington, Delaware

*/s/ Stanley B. Tarr*
Stanley B. Tarr (DE No. 5535)
1201 N. Market Street, Suite 800
Wilmington, Delaware 19801
Telephone:  (302) 425-6400
E-mail:  tarr@blankrome.com

-AND-

**BROWN RUDNICK LLP**
David J. Molton (admitted *pro hac vice*)
Gerard T. Cicero (admitted *pro hac vice*)
Seven Times Square
New York, New York 10036
Telephone:  (212) 209-4800
E-mail:  dmolton@brownrudnick.com
          gcicero@brownrudnick.com

-AND-

**GILBERT LLP**
Kami E. Quinn (admitted *pro hac vice*)
Emily P. Grim (admitted *pro hac vice*)
700 Pennsylvania Avenue, SE
Suite 400
Washington, DC 20003
Telephone:  (202) 772-2200
E-mail:  quinnk@gilbertlegal.com
          grime@gilbertlegal.com

*Attorneys for Eric D. Green, in his capacity as Trustee of the Takata Airbag Tort Compensation Trust Fund*

# TABLE OF CONTENTS

**Page**

Preliminary Statement.................................................................................1

Factual Background ....................................................................................2

Argument .....................................................................................................5

    I.     Interlocutory Appeal is Extraordinary Relief.......................................5

    Ii.    No Controlling Questions of Law Are at Issue.....................................7

    Iii.   There Are No Substantial Grounds for Difference of Opinion Regarding the Bankruptcy Court's Ruling..........................................9

    Iv.   An Appeal Would Not Materially Advance the Litigation.................12

    V.    There Are No Extraordinary Circumstances Justifying an Immediate Appeal...........................................................................13

Conclusion ................................................................................................14

Typeface Requirement and Type-Volume Limitation.............................16

# <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                          **Page(s)**

*In re AE Liquidation, Inc.*,
    451 B.R. 343 (D. Del. 2011)............................................................................12

*Crockett v. Luitpold Pharms., Inc.*,
    No. 19-276, 2020 WL 4039046 (E.D. Pa. July 17, 2020)..............................8, 11

*DeJames v. Magnificence Carriers, Inc.*,
    654 F.2d 280 (3d Cir. 1981) ..............................................................................10

*In re Del. And Hudson Ry. Co.*,
    96 B.R. 469 (D. Del. 1989)...................................................................................6

*E.I. duPont de Nemours & Co. v. Rhodia Fiber & Resin*
    *Intermediates, S.A.S.*,
    197 F.RD. 112 (D. Del. 2000) .............................................................................9

*In re Fairfield Sentry Ltd.*,
    No. 10-03496, 2020 WL 7345988 (Bankr. S.D.N.Y. Dec. 14,
    2020) ...................................................................................................................11

*In re GLG Life Tech Corp. Secs. Litig.*,
    287 F.R.D. 262 (S.D.N.Y. 2012)........................................................................10

*Green v. Mitsui Sumitomo Ins. Co., Ltd.*,
    No. 20-51004 (Bankr. D. Del.) .............................................................................4

*I.M. Wilson, Inc. v. Otvetstvennostyou "Grichko,"*
    No. 18-5194, 2018 WL 6446601 (E.D. Pa. Dec. 10, 2018) ...............................10

*Katz v. Carte Blanche Corp.*,
    496 F.2d 747 (3d Cir. 1974) .....................................................................6, 7, 8

*Knit With v. Knitting Fever, Inc.*,
    Nos. 08-4221, 08-4775, 2010 WL 4977944 (E.D. Pa. Dec. 7, 2010) ...............11

*Marks Law Offs., LLC v. Mireskandari*,
    704 F. App'x 171 (3d Cir. 2017) .......................................................................11

*In re Maxus Energy Corp.*,
611 B.R. 532 (D. Del. 2019) ............................................................7, 9

*McCoy v. Favata*,
No. 17-1046, 2020 WL 5891898 (D. Del. Oct. 5, 2020) ................7, 13

*Orson, Inc. v. Miramax Film Corp.*,
867 F. Supp. 319 (E.D. Pa. 1994) ...........................................................12

*In re Paragon Offshore PLC*, Misc. No. 19-78, 2020 WL 1815550 (D.
Del. Apr. 9, 2020) ....................................................................6, 12, 13

*Pats Aircraft, LLC v. Vedder Munich GmbH*,
197 F. Supp. 3d 663 (D. Del. 2016) ....................................................9

*Rio Props., Inc. v. Rio Int'l Interlink*,
284 F.3d 1007 (9th Cir. 2002) .........................................................11

*In re Semcrude, L.P.*,
No. 08-11525, 2010 WL 4537921 (D. Del. Oct. 26, 2010) ..............6, 8

*In re THG Holdings LLC*,
No. 19-11689, 2020 WL 1493622 (D. Del. Mar. 27, 2020) ................6

*In re TK Holdings, Inc.*,
No. 17-11375 (Bankr. D. Del.) ...........................................................2

*In re United Tax Group, LLC*,
No. 16-1323, 2018 WL 385185 (D. Del. Jan. 11, 2018) ......................6

*Vanderhoef v. China Auto Logistics, Inc.*,
No. 2:18-cv-10174, 2019 WL 6337908 (D.N.J. Nov. 26, 2019) .......10

*In re Venoco, LLC*,
No. 19-463, 2019 WL 2117638 (D. Del. May 19, 2019) ....................7

*Volkswagenwerk Aktiengesellschaft v. Schlunk*,
486 U.S. 694 (1988) ..........................................................................10

**Rules and Statutes**

28 U.S.C. § 158(a)(3) ...................................................................................6

28 U.S.C. § 1292(b) .................................................................................6, 9

Federal Rule of Civil Procedure 4(f) ..............................................................*passim*

Plaintiff/Appellee Eric D. Green ("Plaintiff" or "Trustee"), as trustee for the PSAN PI/WD Trust, d/b/a the Takata Airbag Tort Compensation Trust Fund (the "Trust"), submits this response (the "Response") to Defendant/Appellant Mitsui Sumitomo Insurance Company, Limited's ("Mitsui") Motion for Leave to File Interlocutory Appeal[2] (the "Motion") of the Bankruptcy Court's Memorandum Order Granting the Plaintiff's Motion for Alternative Service (the "Order").  In support of the Response, the Trustee respectfully states as follows:

## PRELIMINARY STATEMENT

1.     Mitsui's Motion is simply its latest attempt to delay this adversary proceeding and avoid Mitsui's payment obligations to the Trust, which have now been due and owing for over a year.

2.     In the Motion, Mitsui argues that this case presents an exception to the well-established policy of postponing review of interlocutory orders until after the entry of final judgment.  Mitsui's arguments are meritless.  Mitsui has failed to satisfy any of the requirements necessary for such extraordinary relief.

3.     First, Mitsui has failed to demonstrate that the Bankruptcy Court's ruling, which involved an extensive review of the factual record of this case, involves a controlling question of law.  Second, Mitsui has failed to show that

---

[2] References to the Adversary Proceeding's (defined below) docket are identified as "Adv. D.I. __."  References to the main bankruptcy docket are identified as "B.D.I. __."  References to this Court's docket are identified as "D.I. __."

there are substantial grounds for difference of opinion regarding the Bankruptcy Court's ruling, which is in accord with well-established Third Circuit precedent. Finally, Mitsui cannot show that an interlocutory appeal would materially advance the ultimate termination of the litigation.  Quite simply, this case does not present the "exceptional circumstances" required for the extraordinary relief of interlocutory appeal.

4.      Accordingly, the Trustee requests that the Court deny Mitsui's Motion and end Mitsui's latest attempt to delay fulfilling its payment obligations.

## FACTUAL BACKGROUND

5.      On June 25, 2017, the Debtors filed for Chapter 11 bankruptcy protection in Delaware Bankruptcy Court in response to liabilities arising from claims alleging personal injury and/or wrongful death allegedly caused by airbag inflators manufactured by the Debtors (the "PI/WD Claims").  *In re TK Holdings, Inc.*, No. 17-11375 (Bankr. D. Del.).

6.      Mitsui, which issued policies providing up to $120 million in coverage for the PI/WD Claims (the "Policies"), actively participated in these bankruptcy proceedings.  Mr. Evan Miller, Mitsui's U.S. counsel, filed, then ultimately withdrew, an objection to the plan of reorganization (the "Plan"), alleging, *inter alia*, that the Plan was not "insurance neutral."  *See id.*, Obj. to

2

Confirmation of Plan, B.D.I. 1946.  Mr. Miller attended the confirmation hearing, representing Mitsui.  *Id.*, Hearing Held/Court Sign-In Sheet, B.D.I. 2111.

7.     The Bankruptcy Court entered an order confirming the Plan (the "Confirmation Order") on February 21, 2018.  The Plan created the Trust to administer the claims of victims killed or seriously injured by the Debtors' products.  *Id.*, Exhibit M to Notice of Filing of Fourth Plan Suppl., B.D.I. 2505-1, §1.2(a)(ii).  The Trust distributes payment to victims on a *pro rata* basis in accordance with its available funds.  Any impact on the Trust's resources therefore has a corresponding effect on amounts available to the Debtors' victims.  Due to the Trust's very limited resources, some of these victims have been waiting years to receive full compensation for their horrific injuries.

8.     The Plan also provided for the transfer of the Debtors' insurance rights to the Trust.  Accordingly, on February 11, 2020, the Trustee sent Mitsui an invoice for the first round of PI/WD Claims the Trust had recently deemed compensable.  Over the ensuing months, the Trustee repeatedly—and unsuccessfully—sought consensual resolution with Mitsui regarding its payment obligations.

9.     On September 22, 2020, Mitsui formally denied coverage for the PI/WD Claims.  Mitsui argued that it was liable only for the amounts the Trust was able to pay to injured claimants with its available resources, rather than the actual

3

value of the claims were it able to pay them in full, as the Debtors would have done outside of bankruptcy.  Mitsui asserted that the "paid" value of the claims was insufficient to trigger its Policies.

10.     On September 30, 2020, the Trustee filed a motion to enforce the Plan in the Bankruptcy Court.  *Id.*, Mot. to Authorize, B.D.I. 4222.  The motion asserted that Mitsui's attempt to exploit the Bankruptcy Code's *pro rata* distribution of assets in order to limit its coverage obligations directly contradicted the Plan and Confirmation Order, which expressly provided that those obligations could not be diminished by the Plan's terms.

11.     Mitsui, through Mr. Miller, filed an objection to the Trustee's motion to enforce.  *Id.*, Obj. of Mitsui to Trustee's Mot. to Enforce the Confirmation Order and Plan, B.D.I. 4229.  Mitsui argued that this issue was a matter of policy interpretation which, per the terms of the Policies, is governed by Japanese law. On October 23, 2020, the Bankruptcy Court denied the Trustee's motion, ruling that the relief sought by the Trustee required a full adversary proceeding.  *Id.*, Letter Ruling Regarding Mot. to Enforce the Order Confirming Debtors' Fifth Am. Plan of Reorganization and the Confirmed Plan, B.D.I. 4245.

12.     On November 5, 2020, the Trustee filed a complaint initiating an adversary proceeding.  *See Green v. Mitsui Sumitomo Ins. Co., Ltd.*, No. 20-51004 (Bankr. D. Del.) (the "Adversary Proceeding").  The issues presented in the

Trustee's complaint, regarding the effects of the Debtors' bankruptcy and plan of

reorganization on Mitsui's obligations under the Policies, were identical to the

issues in the Trustee's motion to enforce.

13.     On November 10, 2020, Mr. Miller informed the Trustee's counsel

that he was not authorized to accept service of the complaint.

14.     On November 19, 2020, the Trustee filed an *ex parte* motion for

alternative service on Mitsui pursuant to Federal Rule of Civil Procedure 4(f)(3), to

which Mitsui filed a response.  *See id.*, Adv. D.I. 5, 7.

15.     The Bankruptcy Court issued a Memorandum Order Granting the

Plaintiff's Motion for Alternative Service (the "Order") on February 12, 2021,

authorizing the Trustee to serve Mitsui's U.S. counsel via electronic and U.S. mail

pursuant to Federal Rule of Civil Procedure 4(f)(3).  The Trustee served a copy of

the complaint on Mitsui's U.S. counsel that same day.

16.     Mitsui then moved for leave to file an interlocutory appeal before this

Court.

## **ARGUMENT**

## I.     **INTERLOCUTORY APPEAL IS EXTRAORDINARY RELIEF.**

17.     Interlocutory appeal is extraordinary relief available "only when the

party seeking leave to appeal 'establish[d] exceptional circumstances [to] justify a

departure from the basic policy of postponing review until after the entry of final

judgment.'"  *In re Paragon Offshore PLC*, Misc. No. 19-78, 2020 WL 1815550, at

*2 (D. Del. Apr. 9, 2020) (second alteration in original) (quoting *In re Del. And

Hudson Ry. Co.*, 96 B.R. 469, 472–73 (D. Del. 1989)).  "Piecemeal litigation is

generally disfavored by the Third Circuit."  *In re Semcrude, L.P.*, No. 08-11525,

2010 WL 4537921, at *2 (D. Del. Oct. 26, 2010).  Pursuant to the standards set

forth in 28 U.S.C. § 1292(b),[3] the party seeking leave to appeal an interlocutory

order must establish that "(1) a controlling question of law is at issue; (2) there are

substantial grounds for difference of opinion as to that question of law; and (3) an

immediate appeal would materially advance the litigation's termination."  *In re

United Tax Group, LLC*, No. 16-1323, 2018 WL 385185, at *2 (D. Del. Jan. 11,

2018).  "Leave for interlocutory appeal may be denied for 'entirely unrelated

reasons such as the state of the appellate docket or the desire to have a full record

before considering the disputed legal issue.'"  *In re THG Holdings LLC*, No. 19-

11689, 2020 WL 1493622, at *6 (D. Del. Mar. 27, 2020) (quoting *Katz v. Carte

Blanche Corp.*, 496 F.2d 747, 754 (3d Cir. 1974)).

---

[3] This Court has jurisdiction to hear interlocutory appeals from the bankruptcy
court pursuant to 28 U.S.C. § 158(a)(3).  Although Section 158(a) "does not
identify the standard[s] district courts should use in deciding whether to grant such
an interlocutory appeal," district courts typically "follow the standards set forth
under 28 U.S.C. § 1292(b), which govern interlocutory appeals from a district
court to a court of appeals."  *In re Paragon*, 2020 WL 1815550, at *2 (citation
omitted).

18.     Mitsui has failed to meet its burden of showing that these three criteria

have been satisfied or that this case somehow presents "exceptional circumstances"

that warrant interlocutory appeal.

## II.     NO CONTROLLING QUESTIONS OF LAW ARE AT ISSUE.

19.     Mitsui has failed to show that the Bankruptcy Court's Order presents

a controlling question of law.  A "'controlling question of law' is 'one which

would result in a reversal of a judgment after final hearing.'"  *McCoy v. Favata*,

No. 17-1046, 2020 WL 5891898, at *2 (D. Del. Oct. 5, 2020) (quoting *Katz* 496

F.2d at 755).  "It is also a question that does not require resolution of factual

matters."  *In re Venoco, LLC*, No. 19-463, 2019 WL 2117638, at *3 (D. Del.

May 19, 2019); *see also In re Maxus Energy Corp.*, 611 B.R. 532, 540 (D. Del.

2019) ("An order involves a 'controlling question of law' when it concerns a

question of law, as opposed to one of fact or a mixed question of law and fact."

(citation omitted)).

20.     Mitsui first argues that its appeal presents "questions of pure law" that

do not require the Court to "engage in a detailed study of the record[.]"  Mot. 7,

D.I. 1.  Mitsui ignores the fact that the Bankruptcy Court entered the Order after

considering the specific facts of this case, and its decision was not purely legal.

*See* Order 7, D.I. 1–2 ("The facts and circumstances of this case support the

Trustee's request for alternative service.").  The Bankruptcy Court found the prior

history between the parties of particular relevance when deciding to authorize alternative service. *See* Mar. 9, 2021 Hr'g Tr., Ex. C to Stay Mot. 5, D.I. 2–3 ("The court found it significant through this memorandum order that Mitsui had appeared in this court a number of times.").

21.     "'The task of determining when the particularities and necessities of a given case require alternative service of process under rule 4(f)(3)' is left 'to the sound discretion of the district court.'"  Order 6, D.I. 1–2 (quoting *Crockett v. Luitpold Pharms., Inc.*, No. 19-276, 2020 WL 4039046, at *1 (E.D. Pa. July 17, 2020).  As this Court's review of that decision involves a fact-based inquiry to determine whether the Bankruptcy Court abused its discretion, this appeal presents a mixed question of law and fact.

22.     Next, Mitsui argues that this case involves a controlling question of law because "the bankruptcy court's order, 'if erroneous, would be reversible error on final appeal.'"  Mot. 7, D.I. 1 (citing *Katz*, 496 F.2d at 755).  However, as set forth above, Mitsui has failed to raise a question of law, as the Order engaged in a fact-intensive inquiry.  *See In re Semcrude, L.P.*, 2010 WL 4537921, at *3 (parties contesting the denial of a motion to dismiss for lack of subject matter jurisdiction had not presented a "question of law" despite parties' argument that "the incorrect denial of a motion to dismiss for lack of jurisdiction would constitute reversible error," as the bankruptcy court's finding was a "largely factual determination").

23. Accordingly, Mitsui cannot show that this appeal presents a controlling question of law.

## III. THERE ARE NO SUBSTANTIAL GROUNDS FOR DIFFERENCE OF OPINION REGARDING THE BANKRUPTCY COURT'S RULING.

24. Mitsui has not demonstrated that there are substantial grounds for a difference of opinion regarding the Bankruptcy Court's Order.

25. The Bankruptcy Court noted that only a "decided minority" of cases have agreed with Mitsui's position, *see* Mar. 9, 201 Hr'g Tr. 7, D.I. 2–3, and Mitsui has not shown that the Order was not "consistent with well-established Third Circuit law," *In re Maxus Energy*, 611 B.R. at 546. Indeed, Mitsui has not pointed to *any* case within this Circuit adopting its interpretation of Rule 4(f). All cases from this Circuit that Mitsui cites are irrelevant. They do not even address alternative service and conclude, unsurprisingly, that documents *sent abroad* must be served in compliance with the Hague Convention. *See* Mot. 11, D.I. 1 (citing *E.I. duPont de Nemours & Co. v. Rhodia Fiber & Resin Intermediates, S.A.S.*, 197 F.RD. 112, 123 (D. Del. 2000) (when statute "necessarily requires the delivery of judicial papers internationally, 'service of process to a foreign corporation ought to comply with the Hague Convention'"); *Pats Aircraft, LLC v. Vedder Munich GmbH*, 197 F. Supp. 3d 663, 672–73 (D. Del. 2016) (citation omitted) (concluding that service on defendant *in Germany* must comply with the Hague Convention);

*DeJames v. Magnificence Carriers, Inc.*, 654 F.2d 280, 288 (3d Cir. 1981) (stating that "in order for [plaintiff] to validly serve process on [defendant] *in Japan*, there must not only be a method for effecting such service but also a state or federal statute authorizing service abroad") (emphasis added).[4]

26.     As the Trustee demonstrated in his response to Mitsui's emergency motion for a stay, courts within the Third Circuit—including the Third Circuit itself—repeatedly have rejected Mitsui's arguments.  Courts in the Third Circuit routinely authorize alternative service on a defendant's U.S.-based counsel pursuant to Rule 4(f)(3), even where the defendant is located in a foreign country that is a signatory to the Hague Convention.  *See, e.g.*, *Vanderhoef v. China Auto Logistics, Inc.*, No. 2:18-cv-10174, 2019 WL 6337908, at *3 (D.N.J. Nov. 26, 2019) (finding that plaintiffs' "proposed method of alternative service on the China Defendants' U.S. counsel is not prohibited by international law, specifically the Convention, of which the United States and China are both signatories").[5]  Courts

---

[4] Mitsui continues to erroneously assert that the Supreme Court in *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694 (1988), held that compliance with the Hague Convention is mandatory to effect service.  *See* Mot. 11, D.I. 1.  To the contrary, "'*Volkswagenwerk* does not hold or even suggest that the Hague Convention must always be complied with before alternative service is ordered.'"  Order 5 n.19, D.I. 1–2 (quoting *In re GLG Life Tech Corp. Secs. Litig.*, 287 F.R.D. 262, 266 n.7 (S.D.N.Y. 2012)).

[5] *See also I.M. Wilson, Inc. v. Otvetstvennostyou "Grichko,"* No. 18-5194, 2018 WL 6446601, at *3 (E.D. Pa. Dec. 10, 2018) (noting that "the Czech Republic is also a signatory to the Hague Convention" and granting motion for alternative service on Czech defendant's U.S. attorney).

in the Third Circuit allow alternative service to take place within the United States.

*See, e.g.*, *Marks Law Offs., LLC v. Mireskandari*, 704 F. App'x 171, 176–77 (3d

Cir. 2017) (upholding service under Rule 4(f)(3) where service was made "by

certified mail upon [defendants'] California Counsel").[6]  And courts in the Third

Circuit do not require plaintiffs to utilize the other methods of service in Rule 4(f)

before authorizing service under Rule 4(f)(3).  *See, e.g.*, *Crockett*, 2020 WL

4039046, at *1–2 (rejecting the defendants' argument "that service pursuant to

Rule 4(f)(3) cannot be made unless attempts via Hague Convention protocols

pursuant to Rule 4(f)(1) have been exhausted and have been unsuccessful," as

"Rule 4(f)(3) is an equally valid method for service as Rule (4)(f)(1)").[7]

27.     The law in this Circuit is clear: "[C]ourts permit 'a wide variety of

alternative methods of service including . . . delivery to the defendant's attorney.'"

*Marks Law Offs.*, 704 F. App'x at 177 (quoting *Rio Props., Inc. v. Rio Int'l

Interlink*, 284 F.3d 1007, 1016 (9th Cir. 2002)).  Mitsui has not shown substantial

grounds for difference of opinion.  A "movant's mere disagreement with the []

ruling is not a substantial ground for difference of opinion for Section 1292(b)

---

[6] Even outside of the Third Circuit, "the majority [of courts] view service on U.S.-based counsel a permissible method under Rule 4(f)(3)."  *In re Fairfield Sentry Ltd.*, No. 10-03496, 2020 WL 7345988, at *12 (Bankr. S.D.N.Y. Dec. 14, 2020).
[7] *See also Knit With v. Knitting Fever, Inc.,* Nos. 08-4221, 08-4775, 2010 WL 4977944, at *3 (E.D. Pa. Dec. 7, 2010) ("Service pursuant to Rule 4(f)(3) . . . 'is merely one means among several which enables service of process on an international defendant.'") (citation omitted).

purposes." *In re AE Liquidation, Inc.*, 451 B.R. 343, 348 (D. Del. 2011) (alteration in original) (citation omitted).

## IV.   AN APPEAL WOULD NOT MATERIALLY ADVANCE THE LITIGATION.

28.    Mitsui has also failed to satisfy the third factor, as an immediate appeal would not materially advance the termination of this litigation.  "An interlocutory appeal materially advances litigation if it '(1) eliminates the need for trial, (2) eliminates complex issues so as to simplify the trial, or (3) eliminates issues to make discovery easier and less costly.'"  *In re Paragon*, 2020 WL 1815550, at *3 (alterations omitted) (quoting *Orson, Inc. v. Miramax Film Corp.*, 867 F. Supp. 319, 322 (E.D. Pa. 1994)).

29.    Mitsui argues that, absent an interlocutory appeal, the parties will "incur significant costs that may turn out to have been wholly unnecessary." Mot. 20, D.I. 1.  It further claims that it will serve judicial efficiency to resolve this appeal now, rather than allowing the case to proceed in front of the Bankruptcy Court and later determine whether the Bankruptcy Court in fact had jurisdiction over Mitsui.  *Id.*

30.    Allowing interlocutory appeal of the Order has no effect on a trial or discovery procedures.  If this Court finds in Mitsui's favor—whether on interlocutory appeal or after a final judgment from the Bankruptcy Court—the Trustee will simply serve Mitsui pursuant to the Hague Convention.  Any briefing

12

or discovery that had taken place up to that point need not be unnecessarily repeated, and the parties would move swiftly toward a conclusion of the case.

31.     The parties will necessarily engage in litigation before the Bankruptcy Court regardless of whether the issue of service is addressed now or after a final judgment from the Bankruptcy Court.  Resolving this appeal now does nothing to materially advance the termination of this litigation.  Mitsui has failed to show that this final factor is met.

## V.     THERE ARE NO EXTRAORDINARY CIRCUMSTANCES JUSTIFYING AN IMMEDIATE APPEAL.

32.     Finally, Mitsui has failed to show that the extraordinary relief of interlocutory review is otherwise warranted.  This is, quite simply, not an extraordinary case that would justify departure from "the basic judicial policy of deferring review until after the entry of final judgment[.]"  *In re Paragon*, 2020 WL 1815550, at *5.  "Interlocutory appeal is meant to be used sparingly and only in exceptional cases where the interests cutting in favor of immediate appeal overcome the presumption against piecemeal litigation."  *McCoy*, 2020 WL 5891898, at *3 (citation omitted).

33.     Mitsui essentially argues that its case is exceptional because here, the Bankruptcy Court is wrong.  But every appellant necessarily believes that the court erred in finding against them, and Mitsui has not presented any compelling reasons why its case is extraordinary.  Mitsui's desire to have its objection resolved *now*,

rather than in the normal course of litigation, does not present an exceptional circumstance.   Instead, it merely reflects Mitsui's desire to complicate matters in a seemingly straightforward litigation, avoid its obligations to the Trust, and force the Trust to continue depleting its resources unnecessarily, all to the detriment of the Debtors' victims.  This Court should not permit Mitsui to do so.

## CONCLUSION

In light of the foregoing, Mitsui's Motion for Leave to File Interlocutory Appeal should be denied.

Dated:   March 15, 2021
         Wilmington, Delaware

**BLANK ROME LLP**

*/s/ Stanley B. Tarr*
Stanley B. Tarr (DE No. 5535)
1201 N. Market Street, Suite 800
Wilmington, Delaware 19801
Telephone:  (302) 425-6400
E-mail:  tarr@blankrome.com

-AND-

**BROWN RUDNICK LLP**
David J. Molton (admitted *pro hac vice*)
Gerard T. Cicero (admitted *pro hac vice*)
Seven Times Square
New York, New York 10036
Telephone:  (212) 209-4800
E-mail:  dmolton@brownrudnick.com
         gcicero@brownrudnick.com

-AND-

**GILBERT LLP**
Kami E. Quinn (admitted *pro hac vice*)

14

Emily P. Grim (admitted *pro hac vice*)
700 Pennsylvania Avenue, SE, Suite 400
Washington, DC 20003
Telephone:  (202) 772-2200
E-mail:  quinnk@gilbertlegal.com
grime@gilbertlegal.com

*Attorneys for Eric D. Green, in his*
*capacity as Trustee of the Takata Airbag*
*Tort Compensation Trust Fund*

15

## CERTIFICATE OF COMPLIANCE WITH
## TYPEFACE REQUIREMENT AND TYPE-VOLUME LIMITATION

As required by Bankruptcy Rule 8013(f)(3)(A) and FRAP 27(d)(1) and 32(a)(5) and (6), made applicable by Bankruptcy Rule 8013(f)(1), the *Response of the Trustee of the Takata Airbag Tort Compensation Trust Fund to Mitsui Sumitomo Insurance Company, Limited's Motion for Leave to File Interlocutory Appeal* contains 3,215 words, excluding the case caption, tables of contents and authorities, and signature block and is written in 14-point Times New Roman typeface.

Dated:   March 15, 2021
        Wilmington, Delaware

**BLANK ROME LLP**

*/s/ Stanley B. Tarr*
Stanley B. Tarr (DE No. 5535)
1201 N. Market Street, Suite 800
Wilmington, Delaware 19801
Telephone:  (302) 425-6400
E-mail:  tarr@blankrome.com

-AND-

**BROWN RUDNICK LLP**
David J. Molton (admitted *pro hac vice*)
Gerard T. Cicero (admitted *pro hac vice*)
Seven Times Square
New York, New York 10036
Telephone:  (212) 209-4800
E-mail:  dmolton@brownrudnick.com
        gcicero@brownrudnick.com

-AND-

**GILBERT LLP**
Kami E. Quinn (admitted *pro hac vice*)

16

Emily P. Grim (admitted *pro hac vice*)
700 Pennsylvania Avenue, SE
Suite 400
Washington, DC 20003
Telephone:  (202) 772-2200
E-mail:  quinnk@gilbertlegal.com
        grime@gilbertlegal.com

*Attorneys for Eric D. Green, in his capacity*
*as Trustee of the Takata Airbag Tort*
*Compensation Trust Fund*

17